## LOTHROP v. GOLDEN et al.

### Sac. No. 386; May 25, 1899.

#### 57 Pac. 394.

**Pleading—Ambiguity.—**A Judgment will not be Reversed for alleged ambiguity in the complaint where it appears from defendant's answer that he was not thereby misled to his prejudice.

**Parties—Misjoinder.—**Where a Complaint Does not Show that a party is improperly joined as a defendant, his remedy is by answer, and not by a demurrer for misjoinder of parties.

**Trover—Misjoinder of Actions.—**Where, in an Action for Conversion, Plaintiff claims damages for malicious acts of defendants in tearing down fences and buildings where the property was situated, there is not a misjoinder of causes of action; complainant's intention being to bring the case within Civil Code, section 3294, allowing exemplary damages where defendant has been guilty of oppression and malice.

**Trover—Damages.—**In an Action for the Conversion of Grain, there was evidence that it was forcibly taken in the absence of the owner, and over the protest of his wife; that defendants were twice arrested to prevent their taking it, but they obtained their release and returned to the premises. Held, that a verdict allowing plaintiff damages for grain taken, for time and money expended in pursuit thereof, and for the malicious taking, was proper, there being sufficient evidence as to the amounts of such damages given.

**Trover—Instructions.—**In an Action for Conversion, it is not error to deny defendant an instruction as to the doctrine of commingling of goods, where there was no evidence thereof.

**Trover—Instructions.—**In an Action for the Conversion of Grain, a part of which plaintiff alleged to have been recovered, and as to which he sought relief only for money expended in pursuit, an instruction that the jury, in estimating the damages, should find the value of the grain at the time of the taking, is not erroneous, as misleading them into believing that damages for the value of the grain returned could be recovered.

**Trover—Exemplary Damages.—**In an Action for Conversion, an erroneous instruction authorizing the jury to award exemplary dam-

ages if the taking was unlawful is not reversible error where the jury specially found damages for the malicious taking of the property.

**Trover—Joinder of Actions.**—Plaintiff in an Action for the conversion of grain alleged that a part had been returned prior to the suit, but sought, under Civil Code, section 3336, to recover compensation for the time and money expended in its pursuit. Held, that the actions were not improperly joined, since all the grain converted was taken at the same time, and the acts complained of constituted one and the same wrong.

**Trover—Instructions.**—Error, in an Action for Conversion, where plaintiff claimed damages for malicious acts of defendant in tearing down his fences to obtain access to the property, in an instruction that if defendants did such acts they were trespassers, and were liable therefor to plaintiff, is harmless, where the special verdict awarded no damages for trespass.

APPEAL from Superior Court, Glenn County.

Action for conversion by M. H. Lothrop against M. Golden and others. From a judgment for plaintiff, and an order denying a motion for a new trial, defendants appeal. Affirmed.

Ben. F. Geis and H. M. Alberry for appellants; Chas. L. Donohoe for respondent.

CHIPMAN, C.—Action for the conversion of certain 585 sacks of barley, and for damages. A fourth amended complaint alleges the malicious, forcible and unlawful taking from plaintiff by defendants, and the conversion of certain 1,388 sacks of whole barley about July 26, 1894, of which plaintiff recovered 803 sacks before this action was commenced. Damage is claimed of $600 and interest for the value of 585 sacks of barley not recovered, "and one hundred dollars damages by reason of the malicious, forcible, oppressive, and unlawful acts of defendants towards plaintiff." It is alleged that "plaintiff has been damaged in time and money properly expended in the pursuit of said eight hundred and three sacks of barley, in the sum of two hundred dollars." It is also alleged that plaintiff has been damaged, in time and money properly expended in the pursuit of said 585 sacks of barley, in the sum of $100. The prayer is for judgment against defendants for the sum of $1,000, and for costs of suit. The complaint is verified. Defendants demurred on several grounds: (1) Insufficiency of facts;

(2) several causes of action improperly united; (3) uncertainty and ambiguity; (4) misjoinder of parties defendant. The demurrer was overruled, and defendants answered, specifically denying the material allegations of the complaint. For further answer it is alleged that the barley, the subject of the action, was grown upon land belonging to and cultivated by one T. J. Kirkpatrick, who had theretofore mortgaged the crops grown and to be grown thereon to defendants, other than O'Brien, to secure the payment of the sum of $1,182.68 owing to defendants Hochheimer & Co. by said Kirkpatrick; that the barley in question was grown upon these mortgaged premises, and was a part of the crop subject to said mortgage, and that said mortgagees were entitled to the possession thereof; that defendant O'Brien was in the employ of and acting for said Hochheimer & Co., and under their direction, during all the times mentioned in the complaint. It is further alleged in the answer that plaintiff claims the barley in question under a pretended purchase from said Kirkpatrick after the execution of said mortgage, and that said sale or transfer was not accompanied by an immediate delivery of the barley, nor followed by an actual and continued change of possession thereof; that no consideration was paid therefor, and said sale was made to defraud the creditors of said Kirkpatrick, and especially defendants, and was fraudulent and void. The cause was tried by a jury, and plaintiff had a verdict for $91.33 "for the value and the interest on the value of ninety-seven sacks of barley," and $163.37 "as money and compensation for time expended in the pursuit of the eight hundred and three sacks of barley," and $34.20 "for money and time properly expended in the pursuit of ninety-seven, number of sacks of barley not returned to plaintiff," and $33.75 "for the malicious taking of the barley." Judgment was accordingly entered for $322.65, the amount of said verdict. The appeal is from the judgment, and from an order denying defendants' motion for a new trial.

1. The complaint is sufficient upon general demurrer. As to the alleged ambiguity and uncertainty, the rule as laid down by this court in numerous cases was stated in the recent case of Hawley Bros. Hardware Co. v. Brownstone, 123 Cal. 643, 56 Pac. 468, and need not be repeated here. An examination of defendants' answer, not to mention the evidence at the trial, clearly shows that defendants were not misled

to their prejudice by the alleged ambiguity or uncertainty in the complaint, in which case the judgment will not be reversed. If O'Brien was not a party to the alleged unlawful taking and conversion of the property, his remedy was by answer, and not by demurrer for misjoinder of parties. Nothing in the complaint shows that he was improperly joined as defendant. Plaintiff had the right to join all who participated in the alleged taking and conversion. Nor do we think that the complaint necessarily discloses a misjoinder of causes of action. The claim of misjoinder is based upon the following allegations: "And by reason of the malicious, forcible, oppressive and unlawful acts of defendants toward plaintiff, plaintiff has been damaged in the sum of one hundred dollars," and allegations charging defendants with "tearing down fences and buildings where the barley was situated," and having "maliciously, forcibly, and unlawfully entered upon the premises of plaintiff." These allegations all point to the gravamen of the complaint, which was that defendants "took and carried away said thirteen hundred and eighty-eight sacks of whole barley, and converted and disposed of the same to their own use and benefit." The evident purpose of the pleader was to bring the case within section 3294 of the Civil Code, which allows exemplary damages "where the defendant has been guilty of oppression, fraud or malice, actual or presumed," etc. There may be some ambiguity and uncertainty in the pleading as to whether the malice and force alleged related exclusively to the manner of taking the barley, but we have seen that defendants were not for this reason misled to their prejudice.

2. It is claimed that the evidence does not sustain the verdict. To determine the question we cannot look where the preponderance of the evidence lies, nor can we accept or reject the evidence of this or that witness, as the jury had the right to do. We can only search to find sufficient evidence to support the verdict upon the questions of fact submitted to the jury. It appears that on August 26, 1893, said T. J. Kirkpatrick was farming sections 1, 2, 11, 12 and 24, township 22 N., range 4 W., in Glenn county. Being indebted to defendants Hochheimer & Co. in the sum of $1,182.68, he gave them a crop mortgage on the crops growing and to be grown on sections 11 and 24 for the crop season of 1893 and 1894. The barley in question was harvested in

July, 1894. Plaintiff testified that about July 4, 1894, he entered upon negotiations with Kirkpatrick, who was his father in law, for the lease of the land being farmed by the latter; and plaintiff began moving his furniture to the place, and his family occupied the premises on the 9th. His father in law and family still occupied the house with plaintiff, and continued to do so. He testified further that the bargain for the lease was made early in July, but was not put in writing until July 24th. He had been in possession before that date, but took possession under the written lease July 24th. The lease does not appear in evidence. On that date Kirkpatrick made a written bill of sale to plaintiff of some farming implements, 900 sacks of barley, and 60 tons of hay in barn, "all situated on the ranch known as the 'Kirkpatrick Ranch,' near Orland, Glenn county" (the land above described). He gave two notes to Kirkpatrick—one for the lease and 'one for the personal property—and these notes, he testified, he afterward paid. It appears from the evidence of E. C. Kirkpatrick, son of T. J., that he (witness) hauled the barley in question from the field to the granaries on the ranch, whence it was taken by defendants; that he hauled 1,518 sacks to these bins, part of which was put in loose and part in sacks; that he assisted in hauling 130 or 140 sacks of this barley to Chico on July 23d. When this barley was taken out he "nailed the granaries up," and there remained in the bins all the barley, less 130 sacks. When he returned from Chico in the afternoon of the 24th, the barley was in the same condition as he left it. The dwelling and granaries were on section 12. He testified that sections 11 and 24 (the mortgaged land) produced 512 sacks, and the other sections 1,518 sacks; that he delivered all the barley grown on sections 11 and 24 to Hochheimer & Co., and there were but 512 sacks of it; that there was no barley hauled to the granaries from sections 11 and 24. The evidence tends to show that under the personal direction of defendant Golden, one of the members of Hochheimer & Co., defendants went with several large freighting teams to where this barley was stored, on July 25th, with the purpose of hauling it away, and while attempting to do so the wife of plaintiff—plaintiff being absent at Sacramento—told Golden the barley belonged to plaintiff, and forbade his taking it. Upon his persisting, which he did by causing the loose barley to be sacked and the wagons loaded,

plaintiff's wife secured warrants for the arrest of the entire party, and they were arrested. She had the barley put back in the granaries, and the teams taken out to the public road. The party, however, were all released, and returned to remove the barley, and were a second time arrested, and a second time returned, and this time hauled away the barley. The evidence tended to show that 803 sacks were delivered to Hochheimer & Co. at their Orland warehouse, and 271 sacks were delivered to them at Greenwood Switch, or at their Germantown warehouse, of all of which plaintiff succeeded in recovering 803 sacks, and no more. The jury gave a verdict for 97 sacks of barley, which, added to the 803 previously recovered, make 900 sacks, the number mentioned in the bill of sale. There was ample evidence to show at least this many sacks taken by defendants in addition to the 803 sacks. The jury found plaintiff entitled to $163.37 expended in the pursuit of the 803 sacks. Plaintiff testified upon this point that he paid out $15 for keeper's fees in Orland; $40 for the rent of a building to which he moved the barley, and $15 for cost of moving it; $50 to haul the barley back to the ranch; and for seven different trips to Willows and expenses, $30. He testified that he spent ten or fifteen days "in looking up this eight hundred and three sacks of barley," and he valued his time and expenses at $5 per day. The jury allowed $34.20 for time and money expended in the pursuit of the 585 sacks, for 97 sacks of which the jury gave a verdict. Plaintiff testified that he spent $20 in money and fifteen or twenty days' time in searching for the 585 sacks claimed, and that it was worth $1 a day for a man to take his place and drive a team. We cannot say that the jury were not justified in the conclusion they reached as to these items. The item $33.75 "for the malicious taking of the barley" finds sufficient support in the evidence, and is authorized under section 3294 of the Civil Code. The evidence shows that the barley was taken with considerable display of violence, in the absence of the one who claimed to own it, and against the protest of his wife; that the defendants were twice arrested to prevent their taking the barley, and as often obtained their release and returned to the premises of the plaintiff, and finally by force obtained access to the premises and granaries, and worked nearly the entire night of the 26th of July to accomplish their

purpose. It may be that defendants thought they had a right to the barley. But they do not justify under any legal process, and were not warranted by any claim of title through their crop mortgage in resorting to so extraordinary a course to obtain possession.

3. Defendants introduced evidence tending to show that sections 11 and 24 produced more barley than 512 sacks, as testified to by E. C. Kirkpatrick, and it is claimed that this evidence tended to show that some of the mortgaged crop was hauled to the granaries; and was mingled with plaintiff's barley, and hence was involved the rule as to mingled goods, as to which defendants asked several instructions, which were refused. There was no evidence which, as we view it, in any way tended to show that any of the mortgaged barley was removed to the granaries, and the direct evidence of Kirkpatrick was that none went there. As we regard defendants' evidence, it tended to contradict Kirkpatrick, who testified that all the mortgaged barley was delivered to defendants, but it did not tend to show that any of it was hauled to the granaries, and therefore it was not error to refuse instructions as to the doctrine relating to commingling goods. There was no evidence calling for instructions upon that subject.

4. The correctness of several instructions given by the court is challenged.

(a) The court instructed the jury as follows: "In estimating the damages sustained by the plaintiff, you will find the value of the property at the time of the conversion as shown by the evidence," etc. The objection is that, using the term "the property," the instruction included "property not sued for as well as property sued for." We suppose defendants refer to the 803 sacks of barley recovered before this suit was brought. The action was for the conversion of all the barley, a part of which had already been found and taken back. As to this latter the only relief sought was for money expended in this pursuit. The instruction could not have misled the jury into believing that a verdict for the value of any part of the 803 sacks could be recovered.

(b) The jury were instructed that if they should find from the evidence that the barley was taken from plaintiff by defendants, "and that such taking was malicious and unlawful and fraudulent, or was malicious or unlawful or fraudulent,

that you may find for the plaintiff damages . . . . by way of punishment to the defendants for their malicious and unlawful acts.'' The objection is that the jury were told they might award exemplary damages if they found the taking to have been unlawful. We think the instruction was erroneous: Yerian v. Linkletter, 80 Cal. 135, 22 Pac. 70. But the jury found specially that plaintiff was damaged ''in the sum of thirty-three dollars and seventy-five cents for the malicious taking of the barley.'' It thus appears that the instruction, though erroneous, did not mislead the jury, and was without injury. There was evidence justifying the verdict that the taking was malicious.

(c) An instruction was given that plaintiff was entitled to recover for time and money expended in the pursuit of the 803 sacks of barley. The objection is that this barley had already been recovered, and plaintiff could not have damage in this action for its pursuit. Plaintiff claims under section 3336 of the Civil Code, which provides that ''the detriment caused by the wrongful conversion of personal property is presumed to be: . . . . (2) A fair compensation for the time and money properly expended in pursuit of the property.'' The complaint shows that defendants originally took this 803 sacks with the other barley, and, although the complaint also shows that plaintiff recovered the 803 sacks before this suit was brought, it does allege ''that plaintiff has been damaged in time and money properly expended in the pursuit of said eight hundred and three sacks of barley.'' We can perceive no good reason why plaintiff should be put to his separate action in order to recover this damage. If he had not succeeded in getting possession of this portion of the barley, and had included it in the complaint as converted, he clearly could have recovered the damage given by the statute. All the barley was taken at the same time, and the acts complained of constituted one and the same wrong. The damage to plaintiff in time and money expended in pursuit of the property grew out of this wrong. The law gave him his action to recover the property or its value, and also damage for money expended in its pursuit. The remedy to recover possession or the value did not become necessary as to the 803 sacks, but it did become necessary as to the time and money expended to get possession. For this the law affords a remedy, and we think, under the circumstances of this case, it

was proper in this action. The reasoning in Arzaga v. Vill-alba, 85 Cal. 191, 24 Pac. 656, we think supports this view.

(d) Instruction 7, in effect, declares that, if defendants did the acts complained of and mentioned in the instruction (coming upon the premises, and tearing down fences and tearing down the doors of the granaries), "then they and their agents were mere trespassers, and for such acts are liable to plaintiff in damages." This was erroneous, and, if there had been a general verdict, would call for a reversal of the judgment. But the verdict is special, and clearly shows that no damages were awarded for trespass, and hence defendants were not injured.

(e) Instruction 10 is that defendants admitted in their answer the taking of 1,388 sacks of barley from plaintiff, and instruction 11 is that the answer admitted taking 1,074 sacks of barley in question on July 26th, and that 803 sacks were recovered by plaintiff, and 271 were never returned, and that, if the jury find that plaintiff was the owner of the 271 sacks, they should find in favor of plaintiff for the value thereof. The answer admits the value of the barley to be $1,100, and that defendants took from plaintiff 1,074 sacks. By failure to deny, defendants admitted the return of 803 sacks, and that there were 271 sacks not returned. Conceding that it was not admitted that they took 1,388 sacks, and that the instruction was unwarranted, still the admission covers 174 sacks more than the jury found were not recovered, and defendants were not injured by the instruction.

Error is claimed as resulting from many other instructions given by the court, but it would greatly prolong this opinion to notice them in detail. It may be remarked that the jury, by its special verdict, cured many of the errors complained of, and others involve questions already noticed. We have discovered no error which could have resulted in injury to defendants. Discovering no reversible error, it is advised that the judgment and order be affirmed.

We concur: Gray, C., Haynes, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.